UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IRA ALSTON,
    *Plaintiff,*

v.

TOBY RUTKOWSKI *et al.*,
    *Defendants*.

No. 3:23-cv-1304 (JAM)

**INITIAL ORDER REVIEW PURSUANT TO 28 U.S.C § 1915A**

Plaintiff Ira Alston is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging that various law enforcement officers, prison officials, and an assistant state's attorney violated his constitutional rights. Based on my initial review, I will allow Alston's fabrication of evidence claims to proceed against two of the defendants but will dismiss all other claims and defendants.

## BACKGROUND

Alston's complaint names the following defendants: State Trooper Toby Rutkowski, Assistant State's Attorney Maurilio R. Amorim, Lieutenant Seth Laprey, Correctional Officer Matthew Loos, Correctional Officer Jimmy Beaz, and Correctional Officer Zachary Brysgel. I draw the following facts from the allegations in Alston's complaint, accepting them as true only for the purposes of this ruling.

On or around June 27, 2022, Laprey and Loos falsely reported to DOC officials that they found a nine-inch piece of sharpened metal inside Alston's cell.[1] On the same day, Laprey also falsely told Rutkowski about the piece of metal, who then reported to DOC to investigate

---

[1] Doc. # 1 at 5 (¶ 1).

1

Laprey's allegation.[2]

On or around December 22, 2022, Rutkowski created an arrest warrant affidavit accusing Alston of illegal possession of a weapon or dangerous instrument inside a correctional facility, in violation of Connecticut General Statutes § 53a-174a(a).[3] He did so despite not having observed the metal inside Alston's cell or any photographs or video of the metal and without having spoken to Loos.[4] According to the complaint, the affidavit intentionally and/or recklessly falsely stated that Loos informed Rutkowski he had found a nine-inch piece of sharpened metal in Alston's cell and that DOC video footage showed Alston tampering with the recreation yard fence, where a piece of metal was later found missing.[5]

On January 23, 2023, based on Rutkowski's arrest warrant and affidavit, Assistant State's Attorney Maurilio R. Amorim charged Alston with possession of a dangerous instrument inside a correctional facility by an inmate.[6] But there was no probable cause for the charge.[7]

The case was tried before a jury in June 2023.[8] Alston alleges that Amorim "knowingly presented the false and substantially misleading testimony" of Loos, Laprey, Rutkowski, Beaz, and Brysgel.[9] He also notes that the DOC video footage presented at trial "clearly disputed the State's theory of the case," and that "despite the video footage," Amorim prosecuted him "with malicious intent."[10]

The jury returned a not-guilty verdict, and the charges were dismissed with prejudice.[11]

---

[2] *Id.* at 5 (¶ 2).
[3] *Id.* at 6 (¶ 4).
[4] *Id.* at 5-6 (¶ 4).
[5] *Id.* at 6 (¶ 5).
[6] *Id.* at 6 (¶¶ 6, 8).
[7] *Id.* at 6 (¶ 8).
[8] *Id.* at 6 (¶ 9).
[9] *Id.* at 6 (¶ 10).
[10] *Id.* at 6 (¶¶ 12-13).
[11] *Id.* at 7 (¶ 15).

Alston seeks injunctive relief compelling disciplinary proceedings against "all [DOC] employees" for providing false testimony in a court of law, declaratory relief against the DOC defendants and ASA Amorim, punitive damages, court costs, and attorney's fees.[12]

### DISCUSSION

The Court is required by law to review prisoner civil complaints and dismiss any portion of such complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must construe the allegations liberally, interpreting them to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[13] However, a *pro se* complaint must still allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See ibid.*

### *Claims against Amorim*

Alston alleges a claim for malicious prosecution against Amorim. But this claim is foreclosed by the doctrine of absolute prosecutorial immunity: "acts by a prosecutor that are 'intimately associated with the judicial phase of the criminal process' are shielded by absolute immunity." *McCray v. Patrolman N.A. Caparco*, 761 F. App'x 27, 32 (2d Cir. 2019) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Prosecutorial immunity covers "virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012).

All of the prosecutorial conduct that Alston alleges falls within the coverage of

---

[12] *Id.* at 7 (¶¶ 1-6).
[13] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

prosecutorial immunity. "The decision to initiate prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function" protected by absolute immunity. *Ogunkoya v. Monaghan*, 913 F.3d 64, 71 (2d Cir. 2019); *see Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) ("[A] prosecutor has absolute immunity for his decision as to what offenses are and are not to be charged.").

Likewise, "[i]mmunity even extends to . . . 'the knowing use of perjured testimony.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 378-79 (S.D.N.Y. 2021) (quoting *Imbler*, 424 U.S. at 431 n.34)); *see also Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is also entitled to absolute immunity despite allegations of his knowing using of perjured testimony."). Accordingly, Alston has failed to state a claim against Amorim for malicious prosecution under § 1983.

Nor has Alston stated a claim for declaratory relief. Although not barred by prosecutorial immunity, declaratory relief requires a plaintiff to show "a sufficient likelihood that he or she will again be wronged in a similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Alston does not allege facts to suggest that he will be prosecuted again for this incident.

Accordingly, Alston has not alleged plausible grounds for relief against Amorim. Therefore, I will dismiss his claims against Amorim.

### *False arrest and malicious prosecution claims against Rutkowski, Laprey, and Loos*

Alston alleges Fourth Amendment claims for false arrest and malicious prosecution against Rutkowski, Laprey, and Loos. To prevail on a constitutional claim for false arrest or malicious prosecution, a plaintiff must show "some deprivation of liberty consistent with the concept of seizure [under the Fourth Amendment of the Constitution]." *James v. City of Albany*,

4

833 F. App'x 346, 347 (2d Cir. 2020) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)). But "[c]ase law is clear that if, at the time of his or her arrest and prosecution, a plaintiff is already in custody or incarcerated on other criminal charges, he or she cannot state a claim for false arrest or malicious prosecution under section 1983 because there is no deprivation of his or her liberty interest." *Figueroa v. Town of North Haven*, 2017 WL 6045421, at *5 (D. Conn. 2017) (collecting cases).

Alston has remained in DOC custody since December 1999 on a manslaughter charge.[14] Thus, he would have already been incarcerated at the time of his trial on the charge giving rise to this suit, and he remains incarcerated after his acquittal. Accordingly, I will dismiss Alston's claims for false arrest and malicious prosecution because he cannot show that he was deprived of liberty as a result of the actions of Rutkowski, Laprey, and Loos.

### *Fabrication of evidence claims against Rutkowski, Laprey, and Loos*

A plaintiff may bring a due process claim for denial of his fair trial rights when an officer fabricates evidence against him. *See Barnes v. City of New York*, 68 F.4th 123, 126 (2d Cir. 2023). To prevail on such a claim for fabrication of evidence, a plaintiff must show that an investigating official fabricated information that would likely influence a jury's verdict and forwarded that information to prosecutors, and that the plaintiff suffered a deprivation of life, liberty, or property as a result. *Id.* at 128.

Alston has alleged a plausible claim for fabrication of evidence against Laprey. He was an investigating officer who allegedly falsely reported finding a weapon in Alston's cell.

---

[14] The Court may judicially notice a fact "that is not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, I take notice of records on the Connecticut DOC website indicating that Alston was last admitted to the custody of DOC on December 14, 1999, for a charge of first-degree manslaughter and is located at the MacDougall-Walker Correctional Institution. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=275666 (last visited Aug. 2, 2024).

Evidence that could influence a decision to prosecute satisfies the requirement that evidence be likely to influence a jury's verdict. *See Frost v. City of New York Police Dep't*, 980 F.3d 231, 250 (2d Cir. 2020). Alston has alleged facts showing the fabrication influenced a decision to prosecute because he has alleged that Laprey's report was included in Rutkowski's arrest warrant—which in turn was the basis for Amorim's decision to charge. This is sufficient, because an officer need not directly forward evidence to a prosecutor for a plaintiff to state a fabrication of evidence claim. *See Ozzborn v. Cornell*, 2021 WL 2227829, at *6 (N.D.N.Y. 2021).

    In addition, Alston has pled the requisite deprivation of liberty. Unlike false arrest or malicious prosecution claims, which arise from the Fourth Amendment's protection against unlawful seizure, fabrication of evidence claims do not require a plaintiff to show additional resulting custody or restraint. Under the due process clause of the Fifth and Fourteenth Amendments, prosecution itself constitutes a deprivation of liberty because "being framed and falsely charged damages an individual's reputation, requires that individual to mount a defense, and places him in the power of a court of law." *Barnes*, 68 F.4th at 130 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)); *see also Ricciuti v. NYC Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (When an officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages."). Accordingly, I will permit Alston's claim for fabrication of evidence to proceed against Laprey.

    Alston has also stated a plausible claim for fabrication of evidence against Rutkowski. He alleges that Rutkowski falsely stated in the arrest warrant affidavit that Loos directly informed

him of a weapon discovered in Alston's cell, and that there existed video evidence that suggested Alston had removed a piece of the metal from the recreational yard fence. He forwarded this information to Amorim, and it formed the basis of Amorim's decision to prosecute Alston.

Although Rutkowski was not operating in an investigative capacity when he allegedly fabricated the evidence—having based his arrest warrant on Laprey's report—any official can be held liable under § 1983 if he fabricates evidence that is forwarded to a prosecutor. *See DiPippo v. Cnty. of Putnam*, 2019 WL 1004152, at *18 (S.D.N.Y 2019) (holding that a corrections officer who falsely claimed that an inmate had confessed was liable for fabrication of evidence). Here, Rutkowski allegedly lied to Amorim about the basis for his warrant and represented that certain evidence existed supporting arrest. Thus, Alston has plausibly alleged a fabrication of evidence claim against Rutkowski, and I will allow this claim to proceed.

By contrast, the complaint does not allege facts to support a claim for fabrication of evidence against Loos. Although Loos reported the piece of metal to DOC officials, it was Laprey—in Alston's telling—who informed Rutkowski, and Rutkowski who informed the prosecutor. Alston explicitly notes that Rutkowski never spoke to Loos or heard from Loos. Under the facts alleged, there is no indication that Loos' report to DOC played a role in Amorim's decision to prosecute or that Loos forwarded his information to the prosecutor. Accordingly, there is no causal relationship between the alleged falsehoods and Alston's prosecution-related deprivation of liberty. "[T]he manufacture of false evidence, in and of itself, does not impair anyone's liberty." *Milner v. City of Bristol*, 2019 WL 3945525, at *3 (D. Conn. 2019).

In short, I will allow Alston to proceed with his fabrication of evidence claims against Laprey and Rutkowski. On the other hand, I will dismiss his fabrication of evidence claim

7

against Loos.

### *False trial testimony*

Alston alleges that defendants Beaz, Brysgel, Laprey, Loos, and Rutkowski falsely testified at trial that Loos found the piece of metal in Alston's cell. But statements made during judicial proceedings are absolutely privileged. *See Alaimo v. Gen. Motors Corp.*, 2008 WL 4695026, at *2 (S.D.N.Y. 2008). Accordingly, "[l]aw enforcement officers are absolutely immune from claims arising from their trial testimony," even if that testimony is false. *Lettieri v. Dep't of Just.*, 2023 WL 7553868, at *4 (W.D.N.Y. 2023) (citing *Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983)). Therefore, I will dismiss all of Alston's claims against any defendant that is based on the defendant's allegedly false trial testimony.

### *Request for order requiring discipline of prison employees*

Alston also seeks injunctive relief "compelling" DOC to initiate disciplinary proceedings against DOC employees who provide false or misleading testimony in a court of law. Such an order would exceed the bounds of the Court's role. Courts adjudicate legal cases and controversies; they do not thrust themselves into prison administration, and instead "permit[] prison administrators to exercise wide discretion within the bounds of constitutional requirements." *Lewis v. Casey*, 518 U.S. 343, 363 (1996); *see* U.S. CONST., art. III, § 2. Moreover, Alston has no constitutional right to have any DOC defendants disciplined. *Joyce v. Hanney*, 2009 WL 563633, at *9 (D. Conn. 2009) (granting summary judgment for a state trooper because discipline or prosecution against him is not a cognizable remedy). Accordingly, I will dismiss Alston's claim for injunctive relief related to prison discipline.

## CONCLUSION

For the reasons set forth above, Alston may proceed with his due process claims for the

8

fabrication of evidence against the defendants Lieutenant Seth Laprey and Trooper Toby Rutkowski in their individual capacities for money damages. The Court otherwise DISMISSES all of Alston's remaining claims.

(1) The Clerk shall verify the current work address for Laprey and Rutkowksi with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to that defendant at the confirmed address within twenty-one (21) days of this Order, and report to the Court on the status of the waiver request by no later than the thirty-fifth (35) day after mailing. If defendants fail to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and they shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(2) Laprey and Rutkowski shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date that the notice of lawsuit and waiver of service of summons forms are mailed to him.

(3) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) The discovery deadline is extended to six months (180 days) from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(5) The deadline for summary judgment motions is extended to seven months (210 days)

from the date of this Order.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(7) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)1 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify the defendant or defense counsel of his new address.

(8) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 2d day of August 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge